COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Humphreys, Kelsey and Petty
Argued at Richmond, Virginia


JACOB JAVAY RUFF, A/K/A
 JACOB JARVAYA RUFF

                                            MEMORANDUM OPINION* BY
v.      Record No. 0569-13-2              JUDGE WILLIAM G. PETTY
                                               MAY 13, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
James S. Yoffy, Judge

(Dannie R. Sutton, Jr.; McDonald, Sutton & DuVal PLC, on brief),
for appellant.  Appellant submitting on brief.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


        Jacob Ruff was convicted of attempted aggravated malicious wounding under Code

§§ 18.2-51.2(B) and 18.2-26.  On appeal, Ruff presents two assignments of error:  (1) the trial

court erred in finding the evidence sufficient to convict Ruff, and (2) Ruff could not be convicted

under Code § 18.2-51.2(B) because it is a gender-specific statute that applies only to female

assailants.  For the reasons stated below, we affirm Ruff's conviction.

                                            I.

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.

Ruff argues that the evidence was insufficient to convict him under Code § 18.2-51.2(B) because the Commonwealth failed to prove that he acted with malice or with the specific intent to maim, disfigure, disable or kill the victim or cause the involuntary termination of her pregnancy. Moreover, Ruff contends that Code § 18.2-51.2(B) is inapplicable to male assailants. We disagree.

A. Sufficiency of the Evidence

"'When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" Mayfield v. Commonwealth, 59 Va. App. 839, 850, 722 S.E.2d 689, 695 (2012) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). In our review, we have "a duty to examine all the evidence that tends to support the conviction." Bolden, 275 Va. at 147, 654 S.E.2d at 586. Accordingly, "[w]e 'must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom.'" Holcomb v. Commonwealth, 58 Va. App. 339, 346, 709 S.E.2d 711, 714 (2011) (quoting Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993)).

Moreover, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts.'" Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson, 443 U.S. at 319).

So viewed, the evidence proved that in the early morning hours of May 9, 2012, Ruff was asleep in bed with his pregnant[1] girlfriend, S. Williams. The two were at Williams's apartment. Williams received a phone call at around 1:00 a.m. from her sister. Ruff, however, believed that the phone call was from another man and accused Williams of cheating on him.

While they were still lying in bed, Ruff slapped Williams on the face and took her phone. Ruff got out of bed and held the bedroom door closed, preventing Williams from leaving the room. He then punched Williams in the face causing Williams to fall to the ground. As Williams was on the ground, Ruff kicked her in the stomach, saying, "I'm going to kill you and that baby; it ain't mine." Williams pleaded with Ruff, "Please don't kill my baby," while holding her stomach in the hope of deflecting further blows to her unborn child. Ruff proceeded to pummel Williams with punches on other places on her body. Williams knocked on the wall of her apartment, pleading for help from her neighbor. Finally, approximately twenty to thirty minutes after the beating had begun, Ruff stopped punching Williams and left the apartment just as a neighbor arrived to render aid to Williams.

Williams was transported to the hospital by ambulance. She received treatment for her injuries, which were mostly to her face from Ruff's punches. Williams gave birth to her daughter two months later. Williams's daughter was healthy, but she was born one month premature.

At trial, Ruff testified in his own defense. Ruff admitted to getting into an argument with Williams and punching her in the face, knocking her to the ground. Ruff denied, however, kicking Williams in the stomach or punching her once she was on the ground. He also denied

---

[1] Williams was six months pregnant at the time.

saying that he was going to kill Williams and her child. He claimed that he punched Williams after she initiated a physical confrontation by pushing him several times. Ruff said that he was merely trying to leave the apartment to defuse the argument.

Ruff was charged with attempted aggravated malicious wounding of a pregnant woman under Code § 18.2-51.2(B), which provides that

> [i]f any person maliciously shoots, stabs, cuts or wounds any other woman who is pregnant, or by any other means causes bodily injury, with the intent to maim, disfigure, disable or kill the pregnant woman or to cause the involuntary termination of her pregnancy, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

"'An attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose.'" Hopson v. Commonwealth, 15 Va. App. 749, 752, 427 S.E.2d 221, 223 (1993) (quoting Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978)).

Thus, the Commonwealth had to prove at trial that Ruff acted "maliciously" and "with the intent to maim, disfigure, disable or kill [Williams] or to cause the involuntary termination of her pregnancy." Code § 18.2-51.2(B). "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury.'" Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).

- 4 -

Moreover, "'[i]ntent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence.'" Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (quoting Wright v. Commonwealth, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "'[I]ntent is the purpose formed in a man's mind, and is usually proved by his conduct, sometimes by his statements . . . ." Shackelford v. Commonwealth, 183 Va. 423, 426, 32 S.E.2d 682, 684 (1945) (quoting Merritt v. Commonwealth, 164 Va. 653, 662, 180 S.E. 395, 399 (1935)).

On appeal, Ruff argues that the Commonwealth failed to prove that he acted with malice or with the specific intent to maim, disfigure, disable or kill Williams or cause the involuntary termination of her pregnancy. Specifically, Ruff contends that the trial court should have believed his version of events over Williams's version of events. Ruff testified that he did not start the physical altercation; instead, he was defending himself and trying to leave the apartment. Further, Ruff testified that he neither kicked Williams in the stomach nor said he was going to kill her and her baby.

It is a well-settled rule that "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). In observing testimony and judging witness credibility, "the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

- 5 -

The trial court heard the testimony of the witnesses. The trial court observed the demeanor of the witnesses. The trial court questioned the witnesses. At the conclusion of the evidence, the trial court found Ruff's version of events to be "suspect." The trial court went on to say that the "manner in which [Ruff] testified" led it to believe that Ruff was not a credible witness. The trial court also noted that Ruff had two prior felony convictions. In contrast, the trial court found Williams to be a credible witness. After reviewing the evidence, we hold that there was sufficient evidence to support the trial court's decision that Ruff had the intent to cause the involuntary termination of Williams's pregnancy and that he acted with malice.

## B. Applicability of Code § 18.2-51.2(B)

Ruff next argues that Code § 18.2-51.2(B) is inapplicable to male assailants. Ruff's argument, however, was not properly preserved for this Court's consideration.

Rule 5A:18 provides, in relevant part: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (quoting West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004)).

"Under settled principles, the 'same argument must have been raised, with specificity, at trial before it can be considered on appeal.'" Johnson v. Commonwealth, 58 Va. App. 625, 637, 712 S.E.2d 751, 757 (2011) (quoting Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004)). "'Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.'" Id. (quoting Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc)).

Here, Ruff's Code § 18.2-51.2(B) argument was not properly preserved for this Court's consideration on appeal because he did not present an argument to the trial court on the statute's gender applicability. Rule 5A:18 therefore bars this Court's consideration of Ruff's Code § 18.2-51.2(B) argument as a basis for reversal. See Jones v. Commonwealth, 29 Va. App. 503, 520-21, 513 S.E.2d 431, 440 (1999).

Nevertheless, Ruff asks this Court to invoke the ends of justice exception to Rule 5A:18. "'The ends of justice exception is narrow and is to be used sparingly . . . .'" Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Id.

Ruff's argument would fail on the merits because it would result in an absurd reading of Code § 18.2-51.2(B). Ruff argues that the statute applies only to women. This reading is contrary to the plain language of the statute. As the plain language of the statute indicates, and which Ruff ignores in his argument, it applies to "any person." Thus, Ruff failed to show that a miscarriage of justice has occurred; therefore, the ends of justice exception does not apply.

III.

For the foregoing reasons, we affirm Ruff's conviction.

Affirmed.